**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

JUDAH JOHNSON,
                      Petitioner,

        v.                                               09-CV-66
                                                      (GTS/DRH)

SCOTT C. CARLSEN, Superintendent,

                      Respondent.
-----------------------------------------------------------------

**APPEARANCES:**                                **OF COUNSEL:**

JUDAH JOHNSON
Petitioner Pro Se
97-B-5272
Watertown Correctional Facility
23147 Swan Road
Watertown, New York 13601

HON. ANDREW M. CUOMO               PRISCILLA I. STEWARD, ESQ.
Attorney General for the State              Assistant Attorney General
  of New York
Attorney for Respondent
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Petitioner pro se Judah Johnson ("Johnson") is currently an inmate in the custody of the New York Department of Correctional Services (DOCS) at Watertown Correctional Facility. Docket No. 5-11, Ex. J at 3. Johnson pleaded guilty to criminal sale of a controlled substance in violation of New York Penal Law § 220.39(1) in Queens County on

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

1

July 16, 1997. Docket No.5-8, Ex. G at 11. He was sentenced to an indeterminate prison term of 3 1/3 to ten years and is currently serving that sentence. Id. Johnson now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that 1) DOCS improperly failed to grant him state jail time credit for the period that he was in federal prison, 2) his final parole revocation hearing was untimely, and 3) the parole board improperly delayed his parole revocation hearing. Docket No. 1 at 4-5. For the reasons which follow, it is recommended that the petition be denied.

## I. Background

On September 5, 1996, Johnson sold over sixteen ounces of marijuana to an undercover police officer. Docket No. 5-2, Ex. A at 9. On October 11 and November 22, 1996, Johnson also sold cocaine to an undercover police officer. Id. He was arrested for these crimes on January 14, 1997. Docket No. 5-8, Ex. G at 10-11. In satisfaction of all charges Johnson pleaded guilty to one count of criminal sale of a controlled substance and, on July 16, 1997, was sentenced as indicated above. Docket 5-8, Ex. G at 10-11.

On March 5, 1998, Johnson was released on parole but was arrested again on May 21, 1999 for driving while intoxicated and resisting arrest. Docket No. 5-3, Ex. B at 8-9. A parole violation warrant[2] was issued. Docket No. 5-3, Ex. B at 2. That warrant was cancelled when Johnson entered a Transitional Program[3] on November 8, 1999. Docket

---

[2] A parole warrant is issued when a defendant has violated the conditions of his parole. It calls for the temporary detention of the parolee in accordance with the rules of the Parole Board. N.Y. Exec. Law § 259-I(3)(a)(I).

[3] A Transitional Program is designed to rehabilitate the behavior that led to a prisoner's incarceration. See Ferry v. Goord, 720 N.Y.S.2d 246, 246 (2000). Johnson's

No. 5-2, Ex. A at 9.  However, Johnson was declared delinquent[4] when he absconded from the program on December 15, 1999.  Id.  A second parole warrant was issued.  Docket No. 5-2, Ex. A at 10; see also Docket No. 7 at 8-9.  Johnson was again declared delinquent as of May 21, 1999.  Docket No. 5-7, Ex. F at 6.  His sentence was interrupted as of that date.  See Id.

Johnson was arrested on March 29, 2001 in the State of Massachusetts for both a weapons offense and the unlawful use of a Social Security Number.  Docket No. 5-5, Ex. D at 2.  On April 1, 2001, the Division of Parole lodged a detainer warrant[5] against Johnson, but cancelled the warrant in June 2001.  Docket 4 at 6.  On July 23, 2002, Johnson pleaded guilty in the United States District Court in Massachusetts to being a Felon in Possession of a Weapon and Ammunition, and for Unlawful Use of a Social Security Number.  Docket No. 5-5, Ex. D at 2.  On November 20, 2002, he was sentenced to a thirty-seven months incarceration[6] in federal prison.  Id. at 2-3.

Upon completion of his federal sentence on December 4, 2003, Johnson returned to

---

parole was contingent on entering and completing this program.  Docket No. 5-2, Ex. A at 12.

[4] A prisoner is declared delinquent when he has violated the conditions of his parole or release and a warrant is then issued for his return to prison.  N.Y. Exec. Law § 259-i(3)(c)(iv).

[5] "A detainer warrant is an administration notification lodged or filed with the institution in which a person is serving a sentence, advising that he or she is wanted to face pending criminal charges in another jurisdiction and requesting that he or she be detained."  N.Y. Crim. Proc. Law § 1349 (2009) (citing People v. Hayden, 414 N.Y.S.2d 473 (Sup 1979)); People v. Valenti, 396 N.Y.S.2d 321 (County Ct. 1977)).

[6] At sentencing, the judge noted that petitioner had been detained in Massachusetts since March 29, 2001 and should receive a time credit for the detention period of March 29, 2001 to November 20, 2002.  Docket No. 5-5, Ex. D at 3.

3

New York for a parole revocation hearing with respect to the second warrant. Docket No. 5-11, Ex. J at 5; Docket No. 7 at 13. During his final revocation hearing on March 2, 2004, Johnson pleaded guilty to violating the conditions of his parole by resisting arrest on May 21, 1999. Docket No. 5-7, Ex. F at 5-7; see also Docket No. 7 at 13. As a result, the remaining charges were withdrawn. Docket No. 5-7, Ex. F at 6. Johnson did not file an appeal from the final revocation hearing. See Docket No. 5-7, Ex. F; see also Docket No. 7 at 13.

In March 2008, Johnson pleaded guilty to possession of contraband in a prison. Docket No. 5-8, Ex. G at 4. In June, Johnson was sentenced to nine months on the criminal conviction. Id. On August 20, 2008, Johnson filed a writ of habeas corpus in the Jefferson County Supreme Court, which was denied on December 18, 2008. Docket No. 1 at 3-4. He did not appeal the denial of the state habeas corpus petition. Id. at 4. This action followed.

## II. Discussion

### A. Timeliness

A federal court may view a habeas corpus petition if it is timely filed. 28 U.S.C. § 2244(d). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition is considered timely when it is filed within a year of the date that the decision becomes final. Id. at (d)(1)(a). Johnson's habeas petition is untimely because the parole revocation decision notice was issued on March 5, 2004 and he failed to file an administrative appeal challenging that determination within the thirty day statute of limitations period. See Docket No. 5-2, Ex. A; N.Y.Comp. Codes R. & Regs tit. 9, §

8006.1(b). Thus, the administrative decision to revoke petitioner's parole became final on that date because he failed to file his administrative appeal in a timely manner.

Johnson had one year from that date, or until April 4, 2005, to file his petition for habeas relief. 28 U.S.C. § 2244(d)(1)(a). Approximately four years after the statute of limitations expired, Johnson filed his petition on January 15, 2009. Docket No. 1 at 6. Therefore, the habeas petition is not timely and should be denied on this ground.

### B. Exhaustion of State Court Remedies

Respondent contends that Johnson has procedurally defaulted on his federal habeas claims. An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court. 28 U.S.C.A. § 2254(b). The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. Id. § 2254(b)(c).

Habeas petitions challenging parole revocations are subject to the doctrine of exhaustion. Scales v. New York State Div. of Parole, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (citations omitted). "To exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78."[7] Id. (quotations omitted); see also N.Y.Comp. Codes R. & Regs tit. 9, § 8006.1. If the Article 78 petition is denied, the petitioner must then appeal that denial to the highest state court capable of reviewing the claim. Scales, 396 F. Supp. 2d at 428 (citing Cotto v. Herbert, 331 F.3d 217,

---

[7]N.Y. C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

237 (2d Cir. 2003)). In this case, Johnson's claims are unexhausted because he failed to present his claims to the highest state court, did not file an administrative appeal, and never sought relief by filing an Article 78 petition.

If a petitioner's unexhausted claims can no longer be raised in state courts due to a procedural default, the federal court shall deem the claims exhausted. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994)). When a petitioner fails to exhaust his state remedies, and the state court finds the claims procedurally barred, federal courts must also deem the claims procedurally defaulted. 28 U.S.C.A. § 2254(b)(1); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). A procedural default usually occurs when petitioner fails to pursue all of his state remedies in a timely manner. Schlup v. Delo, 513 U.S. 298, 327 (1995). Johnson can no longer bring an administrative appeal because he failed to a file a notice of appeal within thirty days, nor can he bring an Article 78 petition because the four month statute of limitations has expired. See N.Y.Comp. Codes R. & Regs tit. 9, § 8006.1(b); N.Y. C.P.L.R. 217. Because state remedies are no longer available to Johnson, his claims are deemed exhausted and considered procedurally defaulted. See Bossett, 41 F.3d at 828.

However, a procedural default does not automatically bar a state prisoner from relief in federal habeas court. Felder v. Goord, 564 F. Supp.2d 201, 212, 213 (S.D.N.Y 2008). Relief may be granted despite the petitioner's failure to exhaust state remedies. Id. at 213. The same procedural default that exhausts Johnson's claims also may bar consideration of the merits of the claim. See Wainwright v. Sykes, 433 U.S. 72, 87 (1977). This can be overcome if petitioner can show "cause" for the default and actual prejudice for his failure to file a timely notice of administrative appeal or an Article 78 motion in accordance with state

6

procedural rules, or that failure to consider the claims will result in a "fundamental miscarriage of justice." Siao-Pao v. Connolly, 564 F. Supp. 2d 232 (S.D.N.Y. 2008); see also 28 U.S.C. § 2254(b)(1).

Neither exception is demonstrated in this case. Johnson makes no attempt to establish cause and prejudice sufficient to excuse his failure to commence an Article 78 proceeding within four months after the determination to be reviewed became final. There is also no record of Johnson administratively appealing the parole revocation decision. As shown in this case, where no cause has been demonstrated, a court need not determine whether petitioner suffered actual prejudice. McCleskey v. Zant, 499 U.S. 467, 502 (1991). Introduction of new evidence of innocence is essential to establish a "fundamental miscarriage of justice," that would allow a federal court to reach the merits of a barred habeas claim. Schlup, 513 U.S. at 316. Nothing introduced in Johnson's habeas petition suggests that he is actually innocent or that if the court fails to consider his unexhausted claims, a "fundamental miscarriage of justice" will occur. See Id. at 327.

Therefore, because Johnson failed to exhaust administrative remedies and is in procedural default, the claims should be denied. In the alternative, therefore, the petition should be denied on this ground.

**C. Merits**

**1. Jail Time Credit**

State issues may not be raised on habeas review. 28 U.S.C. § 2254(a). In conducting habeas review, a federal court has jurisdiction to entertain a petition by a state prisoner for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Williams v. Taylor, 529 U.S. 362, 375 (2000); see also 28 U.S.C. § 2254(a). This Court has no supervisory authority over state courts. Chandler v. Florida, 449 U.S. 560, 571 (1981). Except in extreme circumstances, a state court interpretation of its penal law is binding on the federal courts. Champelle v. Coombe, 567 F. Supp. 345, 352 (S.D.N.Y 1983) (citing Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)); see also Tisdale v. Menifee, 166 F. Supp. 2d 789, 791 (S.D.N.Y. 2001) ("It is well-established that the Bureau of Prisons, not the courts, determines when a defendant's sentence starts and whether the defendant should receive any credit for any time spent in custody.") (internal citations omitted). New York Penal Law § 70.40(3)(a) governs the provision of jail time credit and therefore does not implicate federal concerns and is not cognizable on a federal habeas petition.

Even in the rare instance that federal review was indicated, Johnson still fails to allege a constitutional violation. In his habeas petition, Johnson claims that he has not received credit for time served in federal custody.[8]  Docket No. 1. Pursuant to federal law:

---

[8] Generally, the Federal Bureau of Prisons is "not required to give credit toward a federal sentence for time spent by a prisoner serving a sentence imposed by another jurisdiction for an unrelated offense." Rosemond v. Menifee, 137 F. Supp.2d 270, 274 (S.D.N.Y. 2000) (citing Shaw v. Smith, 680 F.2d 1004, 1006 (5th Cir. 1982)). There is an

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585 (b); see also Tinsdale, 166 F. Supp. 2d at 792. This precludes the possibility for an inmate to receive a double recovery for time served on both state and federal sentences. Tinsdale, 166 F. Supp. 2d at 792 ("Therefore, § 3585(b) precludes [petitioner] from receiving 'double credit' for that time on both his state and federal sentences, and the petition will be denied and the action dismissed."). Similarly, state law provides that "[j]ail time credit" includes "[a]ny time spent by a person in custody from the time of delinquency to the time service of the sentence resumes [that is] credited against the term or maximum term of the interrupted sentence." N.Y. Penal Law § 70.40(3)(c).

---

exception to this rule "if the continued state confinement was exclusively the product of such action by federal law-enforcement officials as to justify treating the state jail as the practical equivalent of a federal one." Id. (explaining that the exception applies where, absent federal action such as a detainer warrant or filing of a habeas petition, the petitioner would have been released pursuant to state procedures).
    This exception does not apply to the facts of this case as Johnson is not in federal custody and is not seeking to have his federal conviction lessened by the time that he served in state prison. Johnson was federally prosecuted on November 20, 2002 for a weapons offense and the unlawful use of a Social Security Number. Docket No. 5-5, Ex. D at 2. Johnson is attempting to use his federal incarceration in Massachusetts as a basis to decrease the amount of jail time left on his 1997 New York State conviction. The exception to the rule of jail time credit is inapplicable because he does not seel credit toward his federal sentence. Even if the exception was the same for his state sentence, state confinement was not the practical equivalent to his federal sentence because the time petitioner spent in state prison after his release from federal custody was unrelated to his federal sentence. Likewise, Johnson's out of state federal incarceration was not the result of the New York State detainer lodged against him nor due to an arrest based on a parole delinquency, but rather a consequence of the conviction for his federal weapons offense in Massachusetts. Johnson is, therefore, not entitled to jail time credit.

9

When a parolee is declared delinquent because he violated the terms of his parole, the underlying sentence is deemed interrupted. United States v. Dumeur, 214 F. Supp. 293, 294 (S.D.N.Y. 1963); see also N.Y. Penal Law § 70.40(3)(a).

> When a person is alleged to have violated the terms of presumptive release or parole and the state board of parole has declared such person to be delinquent, the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of correctional services.

N.Y. Penal Law § 70.40 (3)(a).

Johnson was sentenced to 3-1/3 to ten years. Docket No. 5-2, Ex. A at 9. He served approximately two years in DOCS custody. See Docket No. 5-2, Ex. A at 9. Johnson was declared delinquent because he violated the terms of his parole when he left the Transitional Program on November 25, 1999 and absconded from DOCS supervision. See N.Y. Penal Law § 70.40(3)(a); Docket No. 5-2, Ex. A at 9. As of this date, petitioner's sentence was properly interrupted. Id. Later, on March 29, 2001, Johnson was arrested and taken into federal custody for an unrelated weapons offense in Massachusetts. Docket No. 5-5, Ex. D. Johnson served, and was given credit for, the resulting federal sentence. The interruption of Johnson's state sentence properly continued until he was returned to DOCS custody on December 4, 2003, after the completion of his federal sentence. N.Y. Penal Law § 70.40(3)(a); Docket No. 5-11, Ex. J at 5. Upon arrival in New York, Johnson's state sentence conviction time began to run. Giving Johnson any additional time served for his state sentence prior to that moment would essentially result in a duplicate credit in contravention of federal and state law.

Additionally, to the extent that Johnson claims his sentences should have run

10

concurrently, such claims must also fail. "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Adul-Malik v. Hawk-Sawyer, 403 F.3d 72, 75 (2d. Cir. 2005) (quoting 18 U.S.C.A. § 3584(a) (2009)). The United States Constitution affords no person the right to have state and federal sentences run concurrently. United States v. Dovalina, 711 F.2d 737, 739 n. 1 (5th Cir. 1983). Furthermore, a federal court has no power to make a federal sentence run concurrently with a state sentence. Clemmons v. United States, 721 F.2d 235, 238 (8th Cir. 1983). A prompt final parole revocation hearing granted to a New York parolee who is "subsequently incarcerated in another jurisdiction by reason of the commission of and conviction for another crime committed therein does not enable the parolee to have his existing New York sentence run concurrently with the sentence on the new conviction." People ex rel. Julio v. Walters, 452 N.Y.S.2d 888, 892 (2d Dep't 1982) (citing N.Y. Penal Law § 70.40). If the elements of the crimes do not overlap or if the facts demonstrate that the acts underlying the crimes are separate and distinct, then the court should deem the sentence to run consecutively. People v. Ramirez, 677 N.E.2d 722, 725 (N.Y. 1996). Furthermore, state and federal crimes may be considered separate and distinct. United States v. Marion, 535 F.2d 697, 704 (2d Cir. 1976).

     Johnson's argument that his federal sentence was to run concurrent with his state sentence is not supported by the record. Absent such instruction from the court that the sentences should have been concurrent, and there was none here, the sentences are automatically consecutive. Furthermore, petitioner has no right, nor did the court in Massachusetts have the power, to grant concurrent sentences. Penal Law § 70.40(3)(c)(iii) does not distinguish between concurrent and consecutive sentences. See Docket. In fact,

11

that provision is explicitly contrary to petitioners assertions, providing that his New York State sentence is interrupted and will not recommence until he is returned to DOCS jurisdiction. See Id. Here, Johnson's 2001 federal arrest for illegal weapon possession and unlawful use of a social security number in Massachusetts, was unrelated to his state arrest for criminal sale of a controlled substance in 1997 and his subsequent parole delinquency. See Docket No. 5-11, Ex. J. The elements of Johnson's state and federal crimes are separate and distinct and the facts of both offenses do not overlap. For all of the aforementioned reasons, Johnson's sentences should run consecutively.

For these reasons, the petition should be denied in the alternative on this ground.

### 2. Final Parole Revocation Hearing

A final parole revocation proceeding is an administrative proceeding held solely to enable parol authorities to determine whether the parolee violated the terms of parole. People ex rel. Maiello v. N.Y.S. Bd. of Parole, 65 N.Y.2d 145, 147 (1985). Although a parolee facing revocation of such status is not entitled to the "full panoply of rights" due a defendant in a criminal prosecution, the Supreme Court has held that the revocation of parole implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. Morrisey v. Brewer, 408 U.S. 471, 482 (1972). Therefore, parolees must be afforded both a preliminary hearing upon arrest in order to determine if probable cause exists to believe that the conditions of parole have been violated, and within a reasonable time thereafter, a final revocation hearing dressed with the basic due process requirements of notice, the opportunity to be heard and to cross-examine witnesses, and a neutral and detached hearing body or officer. Id. at 489.

New York law requires that a suspected parole violator receive a preliminary hearing within fifteen days after arrest, and a final revocation hearing within ninety days after the preliminary hearing. N.Y. Exec. Law § 259-i(3)(c)(i) & (f)(i). If an inmate waives his right to a preliminary hearing[9], the day the inmate waives that right may be deemed the day on which the probable cause determination[10] was rendered and the final hearing must be held within ninety days of that waiver or of the determination that there is probable cause to hold the parolee. Id.; see also 28 C.F.R. § 2.49 (f) ("Institutional revocation hearings shall be scheduled to be held within ninety days of the date of the execution of the violator warrant upon which the parolee was retaken.").

Contrary to Johnson's argument, a final revocation hearing must only be scheduled to be held, not completed, within ninety days of the probable cause determination. N.Y. Exec. Law § 259-i(3)(c)(i) & (f)(i). However, the ninety day statutory period to hold a final

---

[9] Respondent argues that upon his return, Johnson waived his right to a preliminary hearing on December 4, 2003 when he was extradited back to New York. Docket No. 4 at 17. However, this is not clearly evidenced by the record. Even if Johnson did not waive his right to a preliminary hearing, he waived all prior procedural defects by pleading guilty at his final parole revocation hearing on March 2, 2004. See generally Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . ."); United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996) (same). In this case, Johnson was represented by counsel and knowingly and voluntarily pleaded guilty at his parole revocation hearing. Docket No. 5-7, Ex. F at 5-7. Furthermore, the probable cause determination that Johnson violated his parole was clearly evidenced by his criminal record and convictions. Docket No. 8, Ex. G at 8-9. Thus, the probable cause determination was made on December 4, 2003 when Johnson was extradited back to New York and the final revocation hearing was timely held within 90 days of that date.

13

parole revocation hearing may be extended when the petitioner "causes or consents to delay or precludes the prompt conduct of such proceedings . . . ." People ex. rel. Smith v. N.Y.S. Bd. of Parole, 517 N.Y.S.2d 145, 147 (1987) (citing N.Y. Exec. Law § 259-i(3)(f)(i)); see also 28 C.F.R. § 2.49 (f) ("[I]f a parolee requests and receives any postponement or consents to a postponed revocation proceeding . . . the above-stated time limits may be extended.").

Here, Johnson claims that he has been denied his statutory right to have a timely revocation hearing. Docket No. 1 at 3-4. However, Johnson's final hearing was held on March 2, 2004, eighty-nine days after his extradition back to New York. Docket No. 5-7, Ex. F at 2-5. The hearing was adjudicated by a neutral decision maker and allowed Johnson, via his counsel, to present his case. Id. at Ex. F. Although there is some confusion in the record, the final revocation hearing was both scheduled and held within the ninety day period after the extradition and thus timely under both federal and state law. Id. at Ex. F at 2. DOCS properly complied with the required procedure. By complying with the state law requirements, Johnson's constitutional rights were protected.

Even if Johnson did not waive his right to a preliminary hearing, and the Court assumes that this constituted a breach of his federal rights, Johnson waived all hearing defects by pleading guilty at his final parole revocation hearing on March 2, 2004. See generally Tollett, 411 U.S. at 267; Coffin, 76 F.3d at 498. In this case, Johnson was represented by counsel and knowingly and voluntarily pleaded guilty at his parole revocation hearing. Docket No. 5-7, Ex. F at 5-7. Therefore, Johnson's claim that he was entitled to a final revocation hearing within ninety days of his extradition to New York is rendered moot because he knowingly and voluntarily pleaded guilty to a parole violation

14

charge at his final revocation hearing on March 2, 2004 and did not seek administrative remedies prior to that hearing.   Docket No. 5-11, Ex. J; see also Docket No. 5-7, Ex. F at 1.  Johnson's proper recourse was to attack the voluntariness of his plea.  However, there is no evidence in the record that the plea was anything other than knowingly and voluntary, thus such claims would also fail.

Therefore, the petition on this ground should be denied in the alternative on its merits.

### 3. Delay of Revocation Hearing

The failure of DOCS to meet a final parole revocation hearing deadline does not implicate a federal constitutional interest for habeas corpus relief.  Longo v. Carberry, No. 96-CV-1417 (RSP)(DNH), 1998 WL 236177, at *3 n. 5 (N.D.N.Y. May 7, 1998) ("[T]he Parole Board's alleged failure to meet its own guidelines does not implicate a protected liberty interest belonging to the petitioner.") (citations omitted).  As a result, this claim presents no issue cognizable on a federal habeas corpus review because Johnson failed to state a constitutional violation and has only alleged a failure to comply with the New York State Executive Law.  See Id.; see also Morgan v. Fillion, No. 98-CV-986 (DAB/SEG), 2000 WL 235986, at *6 (S.D.N.Y. Jan. 31, 2000) (dismissing petition because violations of revocation proceeding time lines fall under state law, for which federal courts have no jurisdiction, unless petitioner also alleged impingements on rights guaranteed by the Constitution).  Additionally, this is the first time Johnson has raised the claim, making it

15

unexhausted and unreviewable by federal court.[11]

---

[11] Even when evaluating Johnson's claims on the merits, pursuant to state law, they still fail. "[W]hen a parolee is incarcerated in a foreign jurisdiction due to a conviction arising out of crimes committed therein and is therefore not within the jurisdiction of the New York Parole Board, he must still be granted a prompt final revocation hearing when he is or may be brought within the convenience and practical control of the New York parole authorities." People ex rel. Porro v. Walters, 453 N.Y.S.2d 220, 220 (2d Dep't 1982) (citations omitted). Until the warrant is deemed to be executed, the alleged violator is not "considered to be within the convenience and practical control of the division of parole..." N.Y. Exec. Law § 259-i(3)(a)(iv). Executive Law § 259-i provides that, "where a parolee is detained in another state, the parole revocation warrant is not deemed executed until the parolee is detained exclusively thereon and he has waived extradition or been ordered extradited." Austin, 585 N.Y.S.2d at 307. The Division of Parole is excused from affording a parolee a final revocation hearing during any period in which the parolee is lodged in a place not subject to the "convenience and practical control" of the Parole Board. N.Y. Exec. Law § 259-I (3)(c),(f); see also People ex rel. Walsh v. Vincent, 40 N.Y.2d 1049, 1050 (1976) (quoting Matter of Beattie v. N.Y.S. Bd. of Parole, 348 N.E.2d 873, 873 (N.Y. 1976)). A parolee is in a place "subject to the convenience and practical control" of the Board, when he is an inmate in a correctional facility over which the Parole Board has jurisdiction. Matter of Beattie, 348 N.E.2d at 873. Given these restrictions, a final parole revocation hearing for an out-of-state parolee is timely when held within 90 days from the date of parolee's return to New York. McIver v. Murray, 713 N.Y.S.2d 587, 588 (4th Dep't 2000). Inmates incarcerated in other states while on New York parole are entitled to a final violation hearing within 90 days of their return to New York. People ex. rel. Chapman v. New York State Bd. of Parole, 636 N.Y.S.2d 265, 266 (Rensselaer County S. Ct. 1995).

Here, Johnson contends that the New York State Parole Board had jurisdiction over him while he was incarcerated in Massachusetts. Docket No. 1 at 6. However, these contentions are incorrect. Johnson was not within the jurisdiction of New York State because he was not located in a facility under the exclusive "convenience and control" of New York parole authorities until he was extradited on December 4, 2003. It is immaterial whether New York Department of Correction Services could have easily brought Johnson back into the "convenience and control" of the state. See N.Y. Exec. Law § 259-o (4). Because petitioner was located in a foreign state, for a federal crime committed therein, it was not mandated that he be brought back to New York State for a final revocation hearing on unrelated charges before the end of his federal sentence. See People ex rel. Julio, 452 N.Y.S.2d 888, 890-91 (2d Dep't 1982) (affirming decision that presence within state's jurisdiction is fundamental to establishing convenience and control). Thus, the ninety day time frame did not begin until Johnson's return to New York on December 4, 2003. Docket No. 5-11, Ex. J at 5; see Docket No. 5-8, Ex. G. Additionally, despite Johnson's contention that his final parole revocation hearing was untimely, the New York State Parole Board properly held petitioner's final revocation hearing within the ninety day statutory period of his extradition from Massachusetts on March 2, 2004. See Docket No.

Additionally, as previously discussed, Johnson's guilty plea at his final revocation hearing effectively waived all claims relating to events transpiring prior to the entry of the guilty plea, given that the plea was knowing and voluntary.  See generally Tollett, 411 U.S. at 267; Coffin, 76 F.3d at 498.  As previously discussed, there is nothing in the record to indicate otherwise.  Therefore, in the alternative, the petition should be denied on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Furthermore, the Court finds that Johnson has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."); see Slack v. McDaniel, 592 U.S. 473, 474 (2000).  Therefore, the Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

---

5-7, Ex. F.

**REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); Fed R. Civ. P. 72, 6(a), 6(e).

DATED: March 26, 2010
       Albany, New York

*David R. Homer*
United States Magistrate Judge